IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00138-SCR

FRONT ROW MOTORSPORTS, INC.
and ROBERT A. JENKINS,

    Plaintiffs,

v.

MICHAEL DISEVERIA and
RONALD C. DEVINE,

    Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR REQUEST FOR ANCILLARY ATTORNEYS' FEES AND COSTS**

Pursuant to this Court's Order [D.E. 83], Plaintiffs Front Row Motorsports, Inc., and Robert A. Jenkins submit the following memorandum in further support of their claim seeking recovery of their Ancillary Fees[1]:

### I.    PRELIMINARY STATEMENT

This Court held that the Indemnity Agreement[2] signed by Defendants Michael DiSeveria ("DiSeveria") and Ronald C. Devine ("Devine", collectively "Defendants") was valid and enforceable and that Defendants breached said agreement. [D.E. 56, p. 13]. This Court also held that, due to Defendants' breach, Plaintiffs shall recover on their breach of contract claim against

---

[1] Plaintiffs incorporate by reference their previous filings, evidence and arguments in support of their position that Defendants breached their duty to defend Plaintiffs pursuant to the terms of the Indemnity Agreement and are entitled to recover their Ancillary Fees. *See* Complaint [D.E. 1, p. 15, ¶ 102]; Plaintiffs' Motion for Summary Judgment [D.E. 31, p. 1; D.E. 32, p. 13]; Plaintiffs' Proposed Findings of Fact and Conclusions of Law [D.E. 69, p. 15-17]; Plaintiffs' Trial Brief [D.E. 70, p. 19-23]; Plaintiffs' Opposition to Defendants' Post-Trial Memorandum [D.E. 81, p. 10-19].

[2] All capitalized, defined terms not otherwise defined herein shall retain the definition attributed to said term pursuant to the Court's December 13, 2023 Order. [D.E. 83].

Defendants jointly and severally in the amount of $2,100,000, plus pre-judgment and post-judgment interest. [D.E. 83, p. 33]. As part of Plaintiffs' breach of contract claim against Defendants, Plaintiffs are also seeking the $412,397.48 that they incurred in attorneys' fees and costs from October 27, 2017 through March 19, 2022 (the "Ancillary Fees") related to Plaintiffs' defense and response required by the Bank's Disposition Notice, the North Carolina Litigation, and the Virginia Litigation (collectively the "Underlying Action"). In support thereof, Plaintiffs state as follows:

## II. ARGUMENT

### A. Plaintiffs' Ancillary Fees Are Recoverable Without a Statutory Basis.

The attorneys' fees and costs that Plaintiffs incurred in defending against the Underlying Action are not attorneys' fees in the traditional sense; rather, they are "ancillary fees" that are a component of the "costs" and "fees" that Devine and DiSeveria each agreed to cover as part of their duty to defend under the Indemnity Agreement [D.E. ¶ 17]. No statutory basis is required to recover "ancillary fees."

There is a distinction between "direct" and "ancillary" fees under North Carolina law, with "ancillary fees" being those attorneys' fees and costs associated with administrative procedure or claims presented by third parties and "direct fees" as those attorneys' fees associated with litigation between the named parties. *See GR&S Atl. Beach, LLC v. Hull*, 2011 NCBC LEXIS 38, at *1 (N.C. Super. Ct. Sept. 29, 2011). This Court and other North Carolina state courts have more recently recognized that ancillary attorneys' fees and costs can be granted without statutory authorization when previously contracted for by the parties. *See US Foods, Inc. v. White Oak Manor-Charlotte, Inc.*, No. 3:19-cv-00227-RJC-DCK, 2021 U.S. Dist. LEXIS 124930, at *15 (W.D.N.C. July 2, 2021) (holding that "the Agreement's indemnification clause explicitly covers 'reasonable

attorneys' fees' among the forms of losses and fees for which Defendant is required to indemnify Plaintiff. Therefore, Plaintiff's reasonable attorneys' fees from the [underlying] action are recoverable as ancillary fees requiring no statutory authorization"); *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, No. 15 CVS 14745, 2019 NCBC LEXIS 46, *104 (N.C. Super. Ct. Aug. 8, 2019) (noting that "the public policy concerns behind requiring statutory authorization for the recovery of direct fees were not necessarily applicable to indemnity agreements allowing for the recovery of ancillary fees."); *GR & S Atl. Beach, LLC* at *6 ("[I]f the Court were to issue a dispositive ruling, its present inclination is, subject to proof, to allow recovery of Ancillary Fees without the need for statutory authority and not subject to the statutory cap of Section 6–21.2."); *see also Norfolk S. Ry. v. Timec Co.*, No. 08-99, 2009 U.S. Dist. LEXIS 105362, at *13 (M.D.N.C. Nov. 9, 2009) (in contractual indemnity action, rejecting argument that plaintiff was not able to recover attorneys' fees incurred in underlying litigation, noting that "[b]ecause Defendant does not provide any authority for the proposition that enforcement of such a provision in an indemnity agreement would require a separate statutory basis, this argument is not persuasive").

Here, the Indemnity Agreement explicitly covers "attorneys' fees" and "costs" among the forms of losses and fees for which Defendants are required to indemnify Plaintiffs. [D.E. 83 ¶ 17]. Therefore, Plaintiffs' attorneys' fees and costs from the Underlying Action are recoverable as ancillary fees requiring no statutory authorization. The Indemnity Agreement also expressly imposed upon Devine and DiSeveria a duty to defend Front Row and Jenkins *Id*. By refusing to defend Front Row and Jenkins in the Underlying Action, Defendants breached their duty to defend, which further obligates Devine and DiSeveria to reimburse Plaintiffs for all the attorneys' fees and costs they incurred defending the Underlying Action on their own. *See Lowe v. Fidelity & Casualty Co.*, 87 S.E. 250 (N.C. 1915) (holding that a plaintiff could recover ancillary fees when a defendant

breached a contractual duty to defend the plaintiff in a previous lawsuit); *see also Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 176 S.E.2d 751, 754 (N.C. 1970) ("It is well settled that an insurer who wrongfully refuses to defend a suit against its insured is liable to the insured for sums expended in payment or settlement of the claim, for reasonable attorneys' fees, for other expenses of defending the suit, for court costs, and for other expenses incurred because of the refusal of the insurer to defend.")

B. **Plaintiffs' Ancillary Attorneys' Fees and Costs are Reasonable.**

Plaintiffs have demonstrated that they are entitled to recover ancillary attorneys' fees and costs. As such, this Court must determine the appropriate amount of fees and costs to award. The Indemnity Agreement does not limit Plaintiffs' recovery of ancillary fees and costs to only those fees that are reasonable. Further, Defendants were given ample opportunity to defend Plaintiffs and control Plaintiffs' attorneys fees in the Underlying Action, but refused to do so, effectively waiving any right Defendants had to argue that the attorneys' fees and costs incurred by Plaintiffs were reasonable. [D.E. ¶ K]. Therefore, Plaintiffs need not demonstrate that the $412,397.48 they are requesting is reasonable.

However, if this Court determines that the propriety or reasonableness of Plaintiffs' Ancillary Fees be evaluated, then North Carolina state law applies to this analysis as Plaintiffs' Ancillary Fees are damages directly resulting from Plaintiffs' breach of contract claim evaluated under North Carolina law. *US Foods, Inc.* at *13 (evaluating reasonableness of ancillary fees arising from contractual indemnity claim under North Carolina law). In determining the reasonableness[3] of attorneys' fees and costs, this Court must make findings of fact as to "the time

---

[3] Pursuant to F.R.C.P. 52 and 59, Plaintiffs have requested that this Court amend its Order and Judgment to find that the ancillary attorneys' fees and expenses incurred by Plaintiffs in the Underlying Action were reasonable.

and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney based on competent evidence." *Brookwood Unit Ownership Assn. v. Delon*, 124 N.C. App. 446, 449-50, 477 S.E.2d 225, 227 (1996).

1.  *Plaintiffs' Counsel Spent Reasonable Time and Labor on the Underlying Action.*[4]

Plaintiffs reasonably incurred fees related to counsel's handling of the Disposition Notice. On October 19, 2017, the Bank gave notice to Plaintiffs that it intended to issue a Notice of Private Disposition. Plaintiffs' counsel spent time reviewing this notice and conferring regarding the same and then reached out to Defendants via counsel to request that Defendants defend and indemnify Plaintiffs and handle the matter. [D.E. 83 ¶¶ 21-23]. Defendants did not respond, so Plaintiffs were forced to incur fees and costs associated with responding to the Bank and defending themselves against such notice. [D.E. 83 ¶¶ 24-25]. Plaintiffs' counsel then reasonably spent time researching the Bank's claims related to the notice to evaluate potential outcomes, reviewing the Bank's communications with NASCAR regarding the sale of CMA 33, communicating with NASCAR regarding their position on the notice, communicating with the Bank and attempting to reach a preliminary settlement with the Bank regarding the notice, and communicating with Plaintiffs' regarding the notice. [D.E. 83 ¶¶ 27-29; Pl. Ex. 34; Stip. 22; Tr. 39:3-14; 43:10-44:1; 202:2-4; Tr.; Def. Ex. OOO].

On November 17, 2017, the Bank initiated the North Carolina Litigation. [D.E. 83 ¶ 30]. Plaintiffs incurred attorneys' fees defending themselves in the North Carolina Litigation. Plaintiffs' counsel still did not receive a response to their notice a month earlier requesting that Defendants indemnify and defend Plaintiffs, so Front Row again retained its own counsel to defend it in North

---

[4] Plaintiffs incorporate by reference herein their arguments asserted in their response to Defendants' Post-Trial Memorandum, specifically those arguments regarding the reasonableness of Plaintiffs requested ancillary attorneys' fees and costs. [D.E. 81 pp. 10-19].

Carolina Litigation. [D.E. 83 ¶ 34]. Plaintiffs' counsel reasonably began reviewing and analyzing the Bank's claims included in its complaint, communicating with Plaintiffs and some of the other named Defendants regarding the same, and preparing Plaintiffs' answer to the Bank's complaint. However, on February 15, 2018, BK Racing filed for bankruptcy in North Carolina federal court (the "Bankruptcy") that stayed the North Carolina Litigation. [D.E. 83, p. 11]. As such, Plaintiffs' counsel did not incur fees during a significant portion of 2018 and 2019 up until the North Carolina state court sent out a notice requiring action in the North Carolina Litigation. [Skufca Decl. ¶ 13]. Plaintiffs' counsel spent time determining the best response to this notice and preparing to step back into litigation before the case was subsequently dismissed on March 30, 2020 by the Bank. [Skufca Decl. ¶ 13; D.E. 83 ¶ 35].

As part of the Bankruptcy, BK Racing asserted that it had rights with respect to the Bank's claimed lien on CMA 33 and contested the amount it owed to the Bank. [Skufca Decl. ¶ 14]. As such, Plaintiffs' counsel aimed to stay abreast of the Bankruptcy to discover information relevant to the Bank's claims against Plaintiffs in the North Carolina Litigation. *Id*. Plaintiffs incurred attorneys' fees and costs in reviewing pleadings filed and testimony elicited in the Bankruptcy. These ancillary fees were reasonable as they allowed Plaintiffs' counsel to learn more about Defendants' alleged defenses against the Bank, which Defendants refused to provide to Plaintiffs' counsel for the majority of the Underlying Action, despite Plaintiffs' counsel's multiple notices to Defendants requesting that Defendants disclose the facts and defenses known to them regarding the Bank's alleged claim on CMA 33. [D.E. 83 ¶¶ 55-57, K; Skufca Decl. ¶ 14].

On March 31, 2020, the Bank initiated the Virginia Litigation against Front Row. [D.E. 83 ¶ 36]. Defendants again refused to defend Plaintiffs in this litigation. [D.E. 83 ¶¶ 41-43]. Therefore, Plaintiffs were again forced to pay for their own counsel to defend them against claims totaling

more than $8 million lobbied by the Bank. [D.E. 83 ¶¶ 38-40]. The Bank vigorously pursued its claims in the Virginia Litigation. [D.E. 83 ¶¶ 36-90]. Additionally, Front Row was forced to file a Third-Party Complaint against Defendants, as Defendants would not provide Plaintiffs with the information Plaintiffs needed to properly defend themselves against the Bank. [D.E. 83 ¶¶ 47-49]. Plaintiffs' counsel participated in extensive discovery and prepared for and attended ten depositions. [Skufca Decl. ¶ 16]. The Virginia Litigation lasted two years, and Plaintiffs' counsel were actively involved in the litigation during the entire two years. *Id*. Further, Defendants took actions to actively require Plaintiffs to spend additional attorneys' fees and costs, including but not limited to evading service of the third-party complaint, refusing to provide Plaintiffs with information on their alleged defenses until close to trial, and refusing to engage in settlement discussions with the Bank despite Plaintiffs' requests. [D.E. 83 ¶¶ 56, 62, 81; Pl. Exs. 44, 66, 72, 75, 77]. As such, Plaintiffs incurred significantly more attorneys' fees and costs during the Virginia Litigation.

In their post-trial brief, based on their review of Plaintiffs' redacted invoices from October 27, 2017 through March 25, 2022, Defendants calculate Plaintiffs' total attorneys' fees and costs to be $429,160.13 and contend that "[o]f this total, $25,648.04 is outside any fair reading of the scope of the Indemnity Agreement." [D.E. 71 p. 9]. Plaintiffs, however, do not seek recovery of $429,160.13 here, and have limited their request to $412,397.48. Plaintiffs have already excluded from their claim the charges included on the invoices that are not related to the Underlying Action. As such, Plaintiffs excluded $29,206.81 of attorneys' fees and costs from their request that were charged for work associated with the purchase of CMA 32 and with work performed for Plaintiffs between March 21 and March 24, 2022. [Trimmer Decl. ¶ 6]. After applying these reductions, Plaintiffs seek recovery of the $412,397.48 that they demanded from

Defendants in their March 2022 demand letter. [D.E. 83 ¶ 100; Pl. Ex. 16]. As explained above, this $412,397.48 was reasonable as it was in line with the work required by every step of the Underlying Action and Defendants' refusal to meaningfully cooperate with Plaintiffs.

  2.  *Plaintiffs' Counsel's Fees Were Customary for Their Work in the Underlying Action.*

  The hourly rates charged by Plaintiffs' counsel in the Underlying Action are generally consistent with rates claimed in other cases involving business disputes. The Eastern District of North Carolina performed an evaluation of multiple cases involving the hourly rates of civil litigators deemed reasonable and determined that the average hourly rates for associates and partners ranged from $220 to $475 per hour, with a median around $375 per hour. *See e.g. Software Pricing Partners, LLC v. Geisman*, No. 3:19-cv-00195-RJC-DCK, 2023 U.S. Dist. LEXIS 84782, at *10 (W.D.N.C. May 15, 2023) (holding attorney hourly rates of $675-775 and $325-$430 as well as paralegal rate of $175-$200 reasonable); *Grimes v. Bruson Grp., Inc.*, No. 5:19-CV-387-BO, 2021 U.S. Dist. LEXIS 81817, 2021 WL 1700349, at *2 (E.D.N.C. Apr. 29, 2021) ("[D]efendants conceded that $400 is a reasonable hourly rate for a civil litigator of Attorney Whiteman's experience."); *Grabarczyk v. Stein*, No. 5:19-CV-48-BO, 2021 U.S. Dist. LEXIS 16786, 2021 WL 308600, at *3 (E.D.N.C. Jan. 29, 2021) ("[F]actors support the time expended at the attorney rate of $400 per hour."); *Gordon Gravelle O v. Kaba Ilco Corp.*, No. 5:13-CV-642-FL, 2019 U.S. Dist. LEXIS 225284, 2019 WL 7584527, at *3 (E.D.N.C. Aug. 8, 2019) (finding "a rate of $350.00 per hour for all hours expended is supported by the weight of the evidence"); *Lorenzo v. Prime Communs., L.P.*, No. 5:12-CV-69-H-KS, 2018 U.S. Dist. LEXIS 236186, 2018 WL 10689708, at *6 (E.D.N.C. Sept. 28, 2018) (relying upon declaration providing "a customary fee for services for experienced counsel in a case like this is at minimum $425 to $475 per hour, and for services by associates with one to three years' experience $225 to $275, and for paralegals $100 to $125 per hour"). North Carolina courts have also surveyed reasonable

rates for Charlotte, North Carolina attorneys and have held that similar hourly rates are reasonable. *See Bradshaw v. Maiden*, 2018 NCBC LEXIS 98, *14 (reviewing a survey of customary hourly rates charged in Charlotte, North Carolina for complex commercial litigation and holding that $450.00 per hour for attorney work and $125.00 per hour for paralegal work is reasonable.)

From 2017 through 2023, Plaintiffs' counsel's hourly rates ranged from $250 to $350, which are well within the range of rates deemed reasonable by this Court and other courts in the Fourth Circuit. [Skufca Decl. ¶ 22]. Additionally, legal staff billed at an hourly rate of $75 and all paralegals billed at an hourly rate of $175.00. *Id*. These were the rates typically charged to Skufca Law, PLLC's clients during the 2017 through 2023 time period. [Skufca Decl. ¶ 25]. As such, all hourly rates charged by Plaintiffs' counsel and legal staff/paralegals were reasonable and customary.

> 3. *Plaintiffs' Counsel Had the Requisite Knowledge and Experience to Prosecute the Underlying Action.*

The outcome of the Underlying Action demonstrates that Plaintiffs' counsel had the requisite knowledge and experience to handle Front Row's defense against the Bank's claims, as Plaintiffs were eventually able to settle the Bank's claims in the Virginia Litigation (and effectively those from the North Carolina Litigation) despite counsel for Defendants' admitting to Plaintiffs that the Bank likely did have some rights in CMA 33. [D.E. 83 ¶ 64]. Not only were Plaintiffs able to settle the Virginia Litigation before incurring a significant amount of attorneys' fees on trial, but Plaintiffs' were also able to settle for a fraction of the over $12 million that the Bank claimed it was owed for seven loans secured by its security interest in CMA 33. [D.E. 83 ¶¶ 50]. Plaintiffs were also able to negotiate the settlement so that it was applied toward BK Racing and Devine's outstanding loans to the Bank, ultimately benefiting Defendants. [D.E. 83 ¶ 92]. As such, Plaintiffs should be awarded all of their requested ancillary attorneys' fees and costs.

C.  **If a Statutory Basis is Required, Plaintiffs' Ancillary Attorneys' Fees and Costs are Recoverable Under § 6-21.2.**

Under North Carolina law and as applied by this Court, no statutory basis is needed to support Plaintiffs' recovery of their ancillary attorneys' fees and costs. However, as argued in Plaintiffs' Opposition to Defendants' Post-Trial Memorandum, under North Carolina law, even if this Court determined that a statutory basis was required, Plaintiffs are entitled to recover their ancillary attorneys' fees and costs under N.C. Gen. Stat. § 6-21.2, which allows for the recovery of attorneys' fees upon any "evidence of indebtedness." [5] [D.E. 81 pp. 18-19]; *see, e.g., Stillwell Enters., Inc. v. Interstate Equip. Co.*, 266 S.E.2d 812, 817 (N.C. 1980); *RI/Raleigh, L.P. v. Shaikh*, 644 S.E.2d 245 (2007); *N.Y. Marine & Gen. Ins. Co. v. Beck Elec. Co.*, No. 05-373, 2007 U.S. Dist. LEXIS 3499, at *28-29 (W.D.N.C. Jan. 16, 2007). Therefore, at a minimum, Plaintiffs are entitled to recover the ancillary attorneys' fees and costs they incurred in the Underlying Action, up to a maximum of 15% of the "outstanding balance" owing on the evidence of indebtedness. N.C. Gen. Stat. § 6-21.2(1). The outstanding balance would be the $2,100,000 judgment against Defendants entered in this action.[6] *See Southland Amusements & Vending, Inc. v. Rourk*, 143 N.C. App. 88, 96, 545 S.E.2d 254, 258 (2001); *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 369, 649 S.E.2d 14, 23 (2007).

### III.  CONCLUSION

In light of the foregoing, Plaintiffs ask that judgment be entered in Plaintiffs' favor on Plaintiffs' breach of contract claim in the amount of $2,512,397.48 in compensatory damages, plus

---

[5] Plaintiffs incorporate herein by reference their argument regarding N.C. Gen. Stat. § 6-21.2 from Plaintiffs' Opposition to Defendants' Post-Trial Memorandum. [D.E. 81 pp. 18-19].

[6] *See* Plaintiffs' argument regarding allowable attorneys' fees and costs referenced in Plaintiffs' Memorandum Supporting their Motion for Direct Attorneys' Fees and Costs, which is incorporated herein by reference.

the legal fees and expenses incurred by Plaintiffs in this action, pre-judgment interest, and post-judgment interest.

Respectfully submitted, this the 3rd day of January, 2024.

Respectfully submitted,

/s/ Daniel S. Trimmer
Daniel S. Trimmer
N.C. Bar. No. 44858
Ronald A. Skufca
N.C. Bar No. 25649
SKUFCA LAW PLLC
1514 S. Church Street, Suite 101
Charlotte, North Carolina 28203
Telephone: (704) 376-3030
Fax: (704) 376-8522
E-mail: dan@skufcalaw.com
E-mail: ron@skufcalaw.com

Jeffery C. Grady
N.C. Bar No. 32695
J. GRADY LAW, PLLC
2300 East Seventh St., Ste. 100
Charlotte, NC 28204-3313
Telephone: (704) 333-7800
Fax: (704) 343-2886
E-mail: jeff@jgradylaw.com

*Counsel for Plaintiffs Front Row Motorsports, Inc. and Robert Jenkins*

## CERTIFICATE OF SERVICE

I certify that on this the 3rd day of January, 2024, I electronically filed the foregoing by using the CM/ECF filing system, and I further certify that I am unaware of any non-CM/ECF participants in this case, and therefore that service will be accomplished by the CM/ECF system.

/s/ Daniel S. Trimmer
Daniel S. Trimmer