**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00138-SCR**

| | | |
|---|---|---|
| **FRONT ROW MOTORSPORTS, INC.** | ) | |
| **AND ROBERT A. JENKINS,** | ) | **ADDITIONAL FINDINGS OF FACT** |
| | ) | **AND CONCLUSIONS OF LAW** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL DISEVERIA AND RONALD** | ) | |
| **C. DEVINE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

      **THIS MATTER** is before the Court following a bench trial and the issuance of its Findings of Fact and Conclusions of Law wherein the Court requested additional briefing on ancillary attorneys' fees before rendering a decision on that issue. (Doc. No. 83). Having received that briefing and supporting sworn affidavits, the Court makes Additional Findings of Fact and Conclusions of Law, and amends the judgment.[1] The Additional Findings of Fact and Conclusions of Law made herein supplement, and do not supplant, the Court's initial Findings of Fact and Conclusions of Law (Doc. No. 83).

## I. ADDITIONAL FINDINGS OF FACT

      The Court makes the following additional findings of fact:

      1.      As explained in the Court's initial Findings of Facts and Conclusions of Law (Doc.

---

[1] With respect to Plaintiffs' Ancillary Fees request, Plaintiffs filed a motion to amend judgment under Federal Rule Civil Procedure 52 or alternatively Rule 59. (Doc. No. 88). The Court notes that it specifically reserved judgment on the issue of ancillary attorney's fees and indicated "full briefing on this issue is needed before the Court renders a decision." (Doc. No. 83).

No. 83), both Devine and DiSeveria signed an Indemnity Agreement. The Indemnity Agreement stated in relevant part that Devine and DiSeveria:

> hereby fully indemnify and agree, each in his individual capacity, to jointly and severally defend and hold harmless Robert A. Jenkins and Front Row Motorsports, Inc., its officers, directors, partners, agents and employees from and against any claims, liabilities, suits, proceedings, causes of action, or damages of any kind, whether in contract, tort or otherwise, that arise from or relate to claims by any and all third parties against one or both Indemnitees arising from or related to (a) the December 06, 2016 sale and transfer by BK Racing, LLC to Front Row Motorsports, Inc. of a NASCAR Cup Series Charter (number 33) Member Agreement; (b) any security agreements or financing statements seeking to be enforce [*sic*] against the Charter by any person or entity; (c) any person or entity claiming any interest, whether perfected or not, in the Charter; and (d) any judgment awards being levied against the Charter by any person or entity. The Indemnitors shall pay claims and losses in connection with the [*sic*] all of the foregoing and shall investigate and defend all claims, suits, or actions of any kind or nature, including appellate proceedings in the name of the applicable indemnified party, and *shall pay all costs and judgments and attorney's fees which may issue thereon*.

(Pl.'s Ex. 8) (emphasis added).

2.      By signing the Indemnity Agreement, Devine and DiSeveria agreed to defend and indemnify Plaintiffs and specifically to pay attorneys' fees and costs arising from claims by third parties arising from and related to: "(a) the December 06, 2016 sale and transfer by BK Racing, LLC to Front Row Motorsports, Inc. of a NASCAR Cup Series Charter (number 33) Member Agreement; (b) any security agreements or financing statements seeking to be enforce[d] against the Charter by any person or entity; (c) any person or entity claiming any interest, whether perfected or not, in the Charter; and (d) any judgment awards being levied against the Charter by any person or entity." (Pl. Ex. 8; Doc. No. 83 ¶¶ 17-19, 96).

3.      Despite repeated requests and notice from Plaintiffs, Defendants refused to defend or indemnify Plaintiffs, including paying attorneys' fees and costs, in connection with the Disposition Notice, North Carolina Lawsuit, and Virginia Lawsuit, all of which fell under the scope of the Indemnity Agreement because they were claims by the third party Bank related to the

CMA 33 sale in December 2016, and the Bank's enforcement of its UCC-1 Financing Statement, whether perfected or not. (Pl. Ex. 2, 8, 11, 12, 14, 77; Stip. 28; Tr. 56:10-58:19; Tr. 200:3-6; Tr. 201:12-15; Tr. 202:22-203:1).

4.     Defendants' breach of the Indemnity Agreement caused Plaintiffs to incur attorneys' fees and costs. (Tr. 132:12-136:8; 204:4-10; Pl. Ex. 23; Doc. No. 105).

5.     Jenkins of Front Row had experience with hiring attorneys related to his other businesses for a variety of legal matters, and helped to select Skufca Law, PLLC, formerly Moretz & Skufca. (Tr. 134:17-135:14-20).

6.     Based on other business experiences, Jenkins believed the rates and fees charged by Skufca Law, PLLC were reasonable for the work that was performed from October 2017 through the conclusion of the Virginia Lawsuit. (Tr. 132:16-136:1).

7.     Also, as further detailed in the Court's initial Findings of Facts and Conclusions of Law (Doc. No. 83), Plaintiffs were billed legal fees and costs arising out of and in connection with the Disposition Notice, North Carolina Lawsuit, and Virginia Lawsuit. (Stip. 37; Tr. 204:4-10).

8.     Defendants' actions and inactions with respect to the Virginia Litigation caused Plaintiffs to incur more attorneys' fees and costs in the Virginia Litigation. The issues became more complicated and time intensive due to the fact that the lien claimed on CMA 33 arose from Defendants' loan obligations rather than Plaintiffs' obligations. Defendants, at least initially, refused to provide facts and defenses known to them to aid in the Virginia Litigation despite repeated requests. Defendants also failed to accept service of certain documents. (Doc. No. 90-3 ¶ 15; Doc. No. 83 ¶¶ 46-61).

9.     Plaintiffs' Complaint requests attorneys' fees for defending the Disposition Notice, North Carolina Litigation, and Virginia Litigation, but does not mention BK Racing's bankruptcy

case or fees incurred in BK Racing's bankruptcy case. (Doc. No. 1 ¶¶ 70, 80, 83, 93, 102).

10.    At trial and in post-trial briefing, including, sworn affidavits, Plaintiffs claim $412,397.48 in attorneys' fees and costs (referred to herein as the "Ancillary Fees"). This total consists of $374,778.70 in attorneys' fees for 1,363.80 hours of work at rates ranging from $75 to $350. (Doc. No. 105). Of the amount requested, Plaintiffs acknowledge that $12,500.50 was incurred in BK Racing's bankruptcy case, consisting of 46.3 hours. Id. Expenses and costs included $37,618.78, which based on the Court's review of the legal invoices included typical litigation-related expenses and costs including, but not limited to, legal research, filing fees, court-reporting related fees, and travel and transportation for case-related matters.

11.    On February 15, 2018, BK Racing filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina. In re BK Racing, LLC, No. 18-30241 (Bankr. W.D.N.C.). Front Row purchased a separate charter, CMA 32 (separate from CMA 33 at issue in this case), from BK Racing in BK Racing's bankruptcy proceedings. (Tr. 50:18-51:9).

12.    During BK Racing's bankruptcy case, Plaintiffs' counsel incurred attorneys' fees for attending hearings, reviewing pleadings/filings, and discussing the bankruptcy with other involved counsel to assist in defending Plaintiffs in connection with the Bank's claims. (Doc. No. 90-3 ¶ 14).

## II.    ADDITIONAL CONCLUSIONS OF LAW

The Court makes the following additional conclusions of law:

A.    Under North Carolina law, a party can recover direct attorneys' fees if such recovery is authorized by statute. Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814-15 (N.C. 1980). North Carolina law is less clear on whether a party may recover ancillary attorneys' fees without statutory authority, particularly where the parties contracted for and an

indemnity agreement between the parties explicitly provides for recovery of ancillary attorneys' fees.[2] <u>Queen City Coach Co. v. Lumberton Coach Co.</u>, 50 S.E.2d 288, 535-36 (N.C. 1948) (concluding indemnity agreement providing for any and all damages or loss did not cover attorneys' fees "[i]n absence of an express agreement" and "considering the language of the contract of indemnity in the case"); <u>GR & S Atl. Beach, LLC v. Hull</u>, No. 11 CVS 5883, 2011 WL 4501912, at *6 (N.C. Super. Ct. Sept. 29, 2011) ("The Court is not aware of any opinion from the North Carolina Supreme Court that directly compares the rules in <u>Stillwell</u> and <u>Queen City Coach</u> and squarely addresses whether the North Carolina general rule prohibiting the recovery of Direct Fees absent statutory authority extends to the recovery of Ancillary Fees when the agreement between the parties clearly provides for such recovery."); <u>US Foods, Inc. v. White Oak Manor – Charlotte, Inc.</u>, No. 3:19-cv-00227-RJC-DCK, 2021 WL 2815805, at *5 (W.D.N.C. July 6, 2021) ("North Carolina courts have not clearly determined whether ancillary attorneys' fees must be expressly authorized by statute."); <u>Crescent Univ. City Venture, LLC v. AP Atl., Inc.</u>, No. 15 CVS 14745, 2019 WL 3765313, at *35-39 (N.C. Super. Ct. Aug. 8, 2019) (noting the state of the law on recovery of ancillary fees is "less than clear" and "remains uncertain"); <u>Sara Lee Corp. v. Quality Mfg.</u>, 201 F. Supp. 2d 608, 614 (M.D.N.C. 2002), <u>aff'd</u>, 61 F. App'x 836 (4th Cir. 2003) (concluding statutory authority is required to recover ancillary attorneys' fees where an indemnification agreement provides for ancillary attorneys' fees); <u>Norfolk S. Ry. Co. v. TIMEC Co., Inc.</u>, No. 1:08CV99, 2009 WL 3787621, at *5 (M.D.N.C. Nov. 9, 2009) (rejecting argument that statutory authorization is required for attorneys' fees when contracted to as part of indemnification agreement, but then finding indemnification at issue did not include attorneys' fees); <u>Stephenson v. Caterpillar Inc.</u>, No. 2:16-CV-00071-JRG-RSP, 2019 WL 4741735, at *8-9

---

[2] The Court agrees with the Parties that North Carolina law applies and has already made such a finding. (Doc. Nos. 56 & 83).

(E.D. Tex. Sept. 11, 2019) (applying North Carolina law, recognizing the uncertain state of the law on this issue in North Carolina, and awarding ancillary fees covered for in an indemnification clause), R. & R. adopted, 2019 WL 4737071 (Sept. 27, 2019).

B.     At least one court in this District has weighed in on whether statutory authority is required to recover ancillary attorneys' fees when contracted for in an indemnity agreement.  In US Foods, Inc., the defendant rented a refrigerated trailer from plaintiff to preserve defendant's food supply following a power outage.  2021 WL 2815805, at *1.  The rental agreement included an indemnification clause, which stated, among other things, "[defendant] hereby agrees at all times to indemnify, defend, and hold [plaintiff] . . . harmless from and against any and all costs, damages, awards, causes of action, losses and fees, including but not limited to, reasonable attorneys' fees." Id. (emphasis added).  The day after delivery, an employee of defendant was injured while using the trailer, and the employee sued the plaintiff in a personal injury action.  Id. at *2.  The defendant did not indemnify or defend the plaintiff as required in the indemnification clause in the personal injury action.  Id.  Instead, the plaintiff defended the personal injury action through settlement, incurring attorneys' fees and costs.  Id.  Thereafter, the plaintiff filed suit against the defendant seeking to enforce its indemnification clause against the defendant.  Id.  The court granted summary judgment in favor of plaintiff on its indemnity claim.  Id. at *5.  The court considered whether the plaintiff was also entitled to attorneys' fees it incurred in the underlying personal injury lawsuit (the ancillary fees).  Id. at *5-6.  The court recognized the distinction between direct attorneys' fees and ancillary attorneys' fees, and held that ancillary attorneys' fees are recoverable without statutory authorization where an indemnification clause "explicitly covers 'reasonable attorneys' fees' among the forms of losses and fees for which Defendant is required to indemnify Plaintiff." Id. at *5-6.  This Court finds US Foods, Inc., and the cases on which it

relied persuasive and declines to create a District split on this issue.[3]

C. Similar to US Foods, Inc., the Indemnity Agreement at issue here explicitly covers attorneys' fees and costs that Plaintiff incurred in defending against the Bank's claims in connection with the Disposition Notice, North Carolina Litigation, and Virginia Litigation. 2021 WL 2815805, at *5-6.

D. Consequently, the Court concludes that Plaintiffs may recover a reasonable amount of the Ancillary Fees, as determined below, as part of their judgment. Id. ("Therefore, Plaintiff's reasonable attorneys' fees from the Bostic action are recoverable as ancillary fees requiring no statutory authorization." (citing Hull, 2011 WL 4501912 at *6)).[4]

E. Defendants' argue the amount of Ancillary Fees that Plaintiffs requested are not reasonable. Meanwhile, Plaintiffs argue that the language of the Indemnity Agreement does not

---

[3] The Court further observes that Stillwell did not consider the specific question of whether statutory authorization is required to recover attorneys' fees incurred in underlying litigation arising from a breach of an indemnity agreement where the indemnity agreement expressly provides for attorneys' fees. 266 S.E.2d at 814-15. On the other hand, the North Carolina Supreme Court in Queen City Coach addressed the issue of ancillary attorneys' fees on a claim for breach of an indemnity agreement. 50 S.E.2d at 288-290. The court did not seek a statutory basis when considering attorneys' fees, but instead looked directly to the language of indemnification agreement. Id. The court did not allow the recovery of ancillary fees pursuant to an indemnity agreement because the indemnity agreement did not expressly authorize their recovery. Id. The decision rested on the absence of an agreement to recover attorneys' fees and did not consider public policy or a general rule prohibiting the recovery of ancillary fees in the absence of statutory authorization. Id.

[4] As explained herein, the Court is persuaded by US Foods, Inc., and concludes that Plaintiffs may recover a reasonable amount of the Ancillary Fees based on the plain language of the Indemnity Agreement. However, the Court observes that even if it reached a different conclusion, a statutory basis also exists for Plaintiffs to recover a portion of their Ancillary Fees. Specifically, pursuant to N.C. Gen. Stat. § 6-21.2, "[o]bligations to pay attorneys' fees upon any . . . evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt, if such . . . evidence of indebtedness be collected by or through an attorney at law after maturity." The statute limits such amount to 15% of the outstanding balance of the evidence of indebtedness. N.C. Gen. Stat. § 6-21.2. Courts have construed, and Defendants "assume without conceding," that an indemnity agreement is an "evidence of indebtedness" for purposes of N.C. Gen. Stat. § 6-21.2. (Doc. No. 95 at 6-7) ("Plaintiffs correctly identify the only applicable statute that could properly support an award of ancillary fees in this case, N.C. Gen. Stat. § 6-21.2" and "[t]he weight of authority would appear to indicate, and Defendants assume without conceding, that a written contract such as the Indemnity Agreement may suffice as an 'evidence of indebtedness' within the meaning of the statute."); Oh. Cas. Ins. Co. v. Am. Tec Elec. Co., No. 1:23-cv-253, 2023 WL 6218212, at *2 (M.D.N.C. Sept. 25, 2023); N.Y. Marine & Gen. Ins. Co. v. Beck Elec. Co., Inc., No. 3:05 CV 373-H, 2007 WL 160689, at *9-10 (W.D.N.C. Jan. 16, 2007); Crescent Univ. City Venture, LLC, 2019 WL 3765313, at *38. As a result, the Court concludes the Indemnity Agreement here is an "evidence of indebtedness" and thus, at the very least, Plaintiffs are entitled to Ancillary Fees in the amount of 15% of the outstanding balance owed under the Indemnity Agreement pursuant to N.C. Gen. Stat. § 6-21.2.

limit ancillary fees and costs to those that are reasonable and also that Defendants' conduct effectively waived any rights they have to object to the reasonableness of the fees. (Doc. No. 89 at 4). While the Court appreciates Plaintiffs' argument, the Court is mindful of its authority to issue a blanket award of attorneys' fees without considering the reasonableness, and, as such, the Court will consider the reasonableness of the Ancillary Fees.[5] See Lab'y Corp. of Am. Holdings, Inc. v. Clinical Lab'y Consultants, Inc., 121 F.3d 699 (4th Cir. 1997) (unpublished table decision) (reversing district court in action to enforce indemnity agreement for not awarding any attorneys' fees from underlying personal injury lawsuit and directing district court to consider reasonableness of such attorneys' fees); W. Insulation, LP v. Moore, 362 F. App'x 375, 380 (4th Cir. 2010) ("Even if awarding fees is mandated by a contractual provision, the amount awarded must still be reasonable."); McKoy v. Lankford, No. 1:22-cv-604 (LMB/JFA), 2023 WL 5437452, at *4-5 (E.D. Va. Aug. 23, 2023) (citing to Virginia law and with respect to a contingency fee noting that "[b]ecause plaintiffs are 'seek[ing] to pass along to an adversary the cost of attorney's fees,' their fee request under the Settlement Agreement's indemnification clause is, as a practical matter, no different than an ordinary request for an award of attorneys' fees under a fee-shifting framework." (quoting Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth, 837 S.E.2d 504, 515 (Va. 2020))); Sky Cable, LLC v. DIRECTV, Inc., 23 F.4th 313, 321 n.7 (4th Cir. 2022) (noting where the defendant did not object to reasonableness of the attorneys' fees, "Coley never objected to the amount or calculation of attorneys' fees as unreasonable, or in any other way challenged the

---

[5] Indeed, the Court notes that elsewhere Plaintiffs appear to argue the Indemnity Agreement allowed for the recovery of "reasonable attorneys' fees." (Doc. No. 70 at 21) ("Here, the Indemnity Agreement explicitly covers "reasonable attorneys' fees" among the forms of losses and fees for which Defendants are required to indemnify Plaintiffs. Therefore, Plaintiffs' reasonable attorneys' fees and costs from the Underlying Action are recoverable as ancillary fees requiring no statutory authorization."); (Doc. No. 69 at 16). Moreover, Plaintiffs' Complaint asserts that Defendants breached the Indemnity Agreement for failing or refusing to "reimburse Plaintiffs the amount of their reasonable costs and expenses, including attorneys' fees, necessary to defend" the claims made by the Bank. (Doc. No. 1 at ¶¶ 102-103 (emphasis added)).

reasonableness of the fees. As such, we forego any further analysis of the reasonableness of the attorneys' fees." (internal citations omitted)).

F.    Under Fourth Circuit guidance,[6] "[t]he proper calculation of an attorney's fee award involves a three-step process." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). First, the court must determine the lodestar figure "by multiplying the number of reasonable hours expended times a reasonable rate." Id.; Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., 127 F. Supp. 3d 607, 618 (E.D. Va. 2015) (applying lodestar methodology to determine reasonableness of attorneys' fees awarded pursuant to contract). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)." McAfee, 738 F.3d at 88; Randolph v. Powercomm Constr., Inc., 715 F. App'x 227, 230 (4th Cir. 2017) (unpublished). The Johnson factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the

---

[6] Plaintiffs cite to North Carolina law for a reasonableness determination of the Ancillary Fees. Defendants cite to Fourth Circuit caselaw and factors when considering the reasonableness of the Ancillary Fees. (Doc. No. 89 at 4-10; Doc. No. 71 at 7-11); see W. Insulation, LP, 362 F. App'x at 380-81 (concluding that Virginia law applies to allow the award of attorneys' fees to a prevailing party when contract provided for attorneys' fees and then applying the twelve Johnson factors to consider the reasonableness of an award of attorneys' fees). The factors and analysis for reasonableness under North Carolina law and Fourth Circuit caselaw are similar, and the Court's conclusions are the same when considering the relevant factors under either North Carolina or Fourth Circuit caselaw. Therefore, while the Court's analysis herein focuses on the Johnson factors adopted by the Fourth Circuit, the Court has separately considered the factors under North Carolina law and reaches the same conclusion as set forth herein. Ehrenhaus v. Baker, 717 S.E.2d 9, 33-34 (N.C. Ct. App. 2011) (explaining that under North Carolina law, the reasonableness of attorneys' fees is governed by the factors found in Rule 1.5 of the Rules of Professional Conduct of the North Carolina State Bar); Brockwood Unit Ownership Ass'n v. Delon, 477 S.E.2d 225, 227 (N.C. Ct. App. 1996) (explaining when considering reasonableness of attorneys' fees the court must consider "labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney based on competent evidence." (quoting West v. Tilley, 461 S.E.2d 1, 4 (1995)) (internal quotation mark omitted))).

professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Randolph, 715 F. App'x at 230 n.2 (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  The fee applicant has the burden of establishing the reasonableness of the hourly rates.  McAfee, 738 F.3d at 91 (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir.1990)).  "A fee applicant is obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which []he seeks an award,'" such as affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.  Id. (quoting Plyler, 902 F.2d at 277).  "'Billing judgment is an important component in fee setting' and '[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'"  Software Pricing Partners, LLC v. Geisman, 3:19-cv-00195-RJC-DCK, 2023 WL 3467768, at *3 (W.D.N.C. May 15, 2023) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  "Thus, to address excessive fee requests, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'"  Id. (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1983)).  The lodestar amount is presumptively reasonable but may be adjusted "in those rare circumstances" where appropriate in a particular case.  McAfee, 738 F.3 at 88-89 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553-54 (2010)).

G.      Second, "the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'"  McAfee, 738 F.3d at 88 (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009)).  "When 'all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'"  Randolph, 715 F. App'x at 230 (quoting Brodziak

v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998)).  Third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." McAfee, 738 F.3d at 88 (quoting Robinson, 560 F.3d at 244).

H.      "Though the Johnson factors and the Fourth Circuit's three-step process guide this Court, the process is not scientific—the 'essential goal in shifting fees is to do rough justice, not to achieve auditing perfection.'"   Software Pricing Partners, LLC, 2023 WL 3467768, at *2 (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)).  "'Trial courts,' therefore, 'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'"  Id. (quoting Fox, 563 U.S. at 838)).

I.      To start, Plaintiffs request $412,397.48 in Ancillary Fees.  This amount is drawn from the invoices admitted during the bench trial and is broken down, in a sworn affidavit, as follows:[7]

---

[7] The invoices admitted during the bench trial were redacted legal invoices.  The Court received an unredacted copy of the invoices and has completed a thorough in camera review of the unredacted invoices in completing its analysis. According to Plaintiffs, the $412,397.48 amount requested excludes the invoices that are not related to the Disposition Notice, North Carolina Lawsuit, and Virginia Lawsuit, including amounts charged for work associated with the purchase of separate charter and with work performed between March 21 and March 24, 2022.  (Doc. No. 89 at 7; Doc. No. 90-3 ¶ 17; Doc. No. 105 ¶ 6).

| Ancillary Fees - October 27, 2017 to March 19, 2022 | | | |
|---|---|---|---|
| Person/Position | Total Hours | Hourly Rate | Total Fees |
| D. Trimmer, Attorney | 4.3 | $ 125.00* | $537.50 |
| D. Trimmer, Attorney | 21.6 | $ 250.00 | $5,400.00 |
| D. Trimmer, Attorney | 0.2 | $ 251.00 | $50.20 |
| D. Trimmer, Attorney | 569.6 | $ 265.00 | $150,944.00 |
| D. Trimmer, Attorney | 281.8 | $ 275.00 | $77,495.00 |
| D. Trimmer, Attorney | 0.1 | $ 300.00 | $30.00 |
| R. Skufca, Attorney | 0.4 | $ 295.00 | $118.00 |
| R. Skufca, Attorney | 57.8 | $ 300.00 | $17,340.00 |
| R. Skufca, Attorney | 107.8 | $ 335.00 | $36,113.00 |
| R. Skufca, Attorney | 110.7 | $ 350.00 | $38,745.00 |
| J. Grady, Attorney | 43.3 | $ 275.00 | $11,907.50 |
| J. Ong, Attorney | 34.2 | $ 275.00 | $9,405.00 |
| S. Clark, Attorney | 12.6 | $ 250.00 | $3,150.00 |
| S. Clark, Attorney | 20.7 | $ 255.00 | $5,278.50 |
| M. Dellinger, Attorney | 26.0 | $ 250.00 | $6,500.00 |
| R. Dougan, Paralegal | 34.2 | $ 175.00 | $5,985.00 |
| S. Kasso, Paralegal | 0.9 | $ 75.00 | $67.50 |
| S. Kasso, Paralegal | 28.9 | $ 175.00 | $5,057.50 |
| S. Mintz, Support | 4.2 | $ 75.00 | $315.00 |
| M. Romero, Support | 4.0 | $ 75.00 | $300.00 |
| M. Barnwell, Support | 0.3 | $ 75.00 | $25.00 |
| C. Smith, Support | 0.2 | $ 75.00 | $15.00 |
| Total Hours | 1,363.8 | Total Fees | $374,778.70 |
| Total Expenses and Costs | | | $37,618.78 |
| Total Ancillary Fees and Costs Requested | | | $412,397.48 |

(Doc. No. 105; Pl.'s Ex. 23).

   J.  Defendants contend that if any Ancillary Fees are awarded, if at all, they should not exceed the following:

> Non-bankruptcy fees incurred prior to the
> filing of the Virginia suit (App'x A,
> Categories A and B): ..................................................$35,511.00
>
> Invoices 42861 and 42927, relating to the
> settlement between Front Row and AUB: ................$13,284.31
>
> Costs (App'x A, Category X): ..................................$25,101.24
>
> Total: ..........................................................................$73,896.55

(Doc. No. 71 at 11; Doc. No. 72; Doc. No. 81 at 11).

K.    The Court now considers the <u>Johnson</u> factors.  The Court concludes Plaintiffs' counsel billed reasonable hours in the amount of 1,308.8, which consists of Plaintiffs' total requested hours billed 1,363.8, minus hours billed on the BK Racing bankruptcy case and hours billed by support staff.  The Court further concludes that Plaintiffs' counsel billed reasonable hourly rates ranging from $175 to $350.  As such, the Court concludes that Plaintiffs may recover Ancillary Fees and Costs which are reasonable in the amount of $399,241.98, consisting of expenses and costs in the amount of $37,618.78 and requested attorneys' fees related to the Disposition Notice, North Carolina Litigation, and Virginia Litigation in the amount of $361,623.20, which excludes the $12,500.50 amount for attorneys' fees incurred related to the BK Racing bankruptcy case and $655 in staff support time.

<u>First Factor: time and labor expended</u>

L.    The Court has thoroughly reviewed the unredacted invoices that Plaintiffs submitted for in camera review.  The Court concludes the costs, time, and labor expended by Plaintiffs' counsel in the Disposition Notice, North Carolina Lawsuit, and Virginia Lawsuit to be reasonable.

M. With respect to the Ancillary Fees incurred during the Disposition Notice, North Carolina Litigation, and Virginia Litigation, the Court observes that these matters involved complicated issues under the Uniform Commercial Code with respect to a claimed lien on CMA 33. Also, as previously detailed, Defendants' actions and inactions in the Virginia Litigation caused Plaintiffs to expend *more* costs and attorneys' fees.

N. Plaintiffs consistently requested that Defendants assume their duty to defend Plaintiffs. If Defendants had assumed this duty to defend, then Plaintiffs would not have incurred the Ancillary Fees. Plaintiffs also repeatedly requested Defendants disclose all facts and defenses to aid in defense of the Bank's claims, but despite this, Defendants declined, at least initially, to provide facts and defenses known to them. (Doc. No. 83 ¶¶ 46-49, 53-58). Defendants further refused to defend and indemnify Plaintiffs, and despite offers to do so, failed to participate in the settlement of the Bank's claim in any meaningful way. All of this drove attorneys' fees incurred by Plaintiffs. See McAfee, 738 F.3d at 90-91 ("The court observed that failure to contemplate a settlement strategy makes for expensive litigation, and the defendant must bear the consequences. Boczar asserts that the court, by taking her settlement position into account, abused its discretion and punished Boczar for her recalcitrance. Boczar's argument falls short in two respects. First, a district court has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so. Second, although the court expressed disapproval of Boczar's apparent failure to seriously engage in settlement negotiations, the court did not alter its lodestar calculations to reflect that disapproval. The court simply observed that any prolonged litigation caused by a failure to settle would be subsumed in the time component of the lodestar calculation." (internal quotations and citations omitted)). Plaintiffs spent roughly two years defending the Virginia Litigation through extensive discovery and the Bank's dispositive motion. Given all of

this, the Court concludes that the time and labor expended by Plaintiffs in defending the Disposition Notice, North Carolina Litigation, and Virginia Litigation to be reasonable and recoverable.

O.      On the other hand, the Court concludes that Plaintiffs cannot recover Ancillary Fees for the time and labor expended in BK Racing's bankruptcy case.  First, the Court notes that Plaintiffs' Complaint claims breach for failing or refusing to "reimburse Plaintiffs the amount of their reasonable costs and expenses, including attorney fees, necessary to defend against the Disposition Notice, [North Carolina Lawsuit], and [Virginia Litigation]."  (Doc. No. 1 ¶¶ 70, 80, 83, 93, 102).  Indeed, Plaintiffs' Complaint does not even mention BK Racing's bankruptcy proceeding or any attorneys' fees Plaintiffs incurred therein.  Further, Front Row purchased a separate NASCAR charter distinct from the Charter at issue in this case in the BK Racing bankruptcy proceeding.  While Plaintiffs represent that they have removed time attributed to purchasing that charter from their request, they have not clearly delineated for the Court which time they have removed from the invoices that are attributable to purchasing another charter in the bankruptcy case.  (Doc. No. 90-3 ¶ 17).

P.      Based on these observations, this factor guides the Court to reduce the requested Ancillary Fees requested by $12,500.50, the amount Plaintiffs attribute to BK Racing's bankruptcy case.

Q.      In addition, the Court deducts $655.00 of time attributable to "support."  The Court observes this time was neither billed by an attorney nor paralegal, and the Court has little to no detail on the tasks that would support recovery.  USA Trouser, S.A. De C.V. v. Int'l Legwear Grp., Inc., No. 1-11-cv-00244-MR-DLH, 2013 WL 12404905, at *1 (W.D.N.C. Apr. 16, 2013) ("[o]nly hours expended by counsel or a legally trained professional, such as a paralegal, may be claimed"

for attorneys' fees, as other support staff are "overhead for the firm and therefore not recoverable."); Driskell v. Summit Contracting Grp., Inc., No. 3:16-cv-00819-FDW-DCK, 2021 WL 3044156, at *3 (W.D.N.C. Jul. 19, 2021) (excluding fees for support staff given insufficient evidence to show they "provided professional legal services that required a legal training or background"). In addition, certain of the "support" timekeepers had nominal time, including a .2 totaling $15.00 and a .3 totaling $25.00 for the entire case, indicating that these timekeepers could not have worked on the case in any material way. Given all of this, the Court concludes such time is not recoverable.

R.      Based on the Court's review of the legal invoices, the Court concludes the $37,618.78 in requested costs are reasonable because they involve typical litigation-related expenses and costs including, but not limited to, legal research, filing fees, court-reporting related fees, and travel and transportation for case-related matters.

> Second, Third, and Ninth Factors: novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, and the experience, and reputation and ability of the attorney

S.      As discussed in detail with respect to the time and labor expended, the Disposition Notice, North Carolina Litigation, and Virginia Litigation involved complicated legal issues under the Uniform Commercial Code, which were made more complicated by Defendants' actions and inactions. In addition to the already complicated legal issues, the case involved a lien on a NASCAR charter, which created additional issues and complications in the Bank Litigation. Mr. Skufca has "specialized experience in representing NASCAR team[s] involved in Charter transfers . . . [and has] provided legal representation to NASCAR teams . . . in the range of 1/3 (33%) of the transfers." (Doc. No. 90-3 ¶ 7). The Court has no concern with the reputation and abilities of Plaintiffs' counsel, as evidenced by their work in this case. Nor do Defendants "question the

reputation of [P]laintiffs' counsel." (Doc. No. 72 at 10). Therefore, the Court concludes that these factors weigh in favor of Plaintiffs for no reduction in the Ancillary Fees requested.

<u>Fifth Factor: the customary fee for like work</u>

T.     Plaintiffs' counsel billed from October 2017 to March 2022 hourly rates for attorneys' work between $250 to $350[8] and paralegal work at mostly $175 per hour. (Doc. No. 90-3 ¶ 22; Pl.'s Ex. 23). These were the rates typically charged by Plaintiffs' counsel's firm to its clients during that time period. (Doc. No. 90-3 ¶ 25). In addition, Plaintiffs' counsel charged Plaintiffs "a historically lower rate" than what they charged during that same time period for new clients because of the firm's relationship with Plaintiffs. <u>Id.</u> ¶ 19. The Court concludes these hourly rates charged were reasonable and customary rates for like work in the Charlotte, North Carolina area. This factor weighs in favor of Plaintiffs for no reduction in the Ancillary Fees requested. <u>See</u> e.g. <u>Software Pricing Partners, LLC</u>, 2023 WL 3467768, at *4 (finding attorney hourly rates of $675-775 and $325-$430 as well as paralegal rate of $175-$200 reasonable); <u>Bradshaw v. Maiden,</u> 14-CVS-14445, 2018 WL 4522000, at *4-5 (N.C. Super. Ct. Sept. 20, 2018) (reviewing a survey of customary hourly rates charged in Charlotte, North Carolina for complex commercial litigation and holding that $450.00 per hour for attorney work and $125.00 per hour for paralegal work is reasonable); <u>In re Newbridge Bancorp S'holder Litig.</u>, 2016 WL 6885882, at *15, (N.C. Super. Ct. Nov. 22, 2016) ("[T]he Court concludes that a typical and customary hourly rate charged in North Carolina for complex commercial litigation of the sort involved here ranges from $250 to $475."); <u>Grimes v. Bruson Grp., Inc.</u>, No. 5:19-CV-387-BO, 2021 WL 1700349, at *2 (E.D.N.C. Apr. 29, 2021) ("[D]efendants concede that $400 is a reasonable hourly rate for a

---

[8] Plaintiffs' counsel billed 4.3 hours at a rate of $125.00; however, this was solely for hours spent on the BK Racing bankruptcy case which the Court concludes Plaintiffs may not recover. (Doc. No. 105 ¶¶ 5-7).

civil litigator of Attorney Whiteman's experience."); <u>Grabarczyk v. Stein</u>, No. 5:19-CV-48-BO, 2021 WL 308600, at *3 (E.D.N.C. Jan. 29, 2021) ("[F]actors support the time expended at the attorney rate of $400 per hour."); (Doc. No. 90-3 ¶¶ 26-29; Doc. No. 90-4 ¶¶ 19-21).

<u>Sixth Factor and Eighth Factor: the attorneys' expectations at the outset of the litigation and the amount in controversy and the results obtained</u>

U.      "In analyzing the attorney's expectations, courts consider whether an attorney offered a fixed or contingent fee at the outset of a case." <u>Software Pricing Partners, LLC</u>, 2023 WL 3467768, at *4. Here, Plaintiffs' counsel billed hourly. With respect to results obtained, "'[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.'" <u>Id.</u> at *5 (quoting <u>Hensley</u>, 461 U.S. at 435). As the Court previously detailed in its initial Findings of Fact and Conclusions of Law, the Bank asserted it had a lien on CMA 33. (Doc. No. 83 ¶ 79). As a result of the Bank's claims, Plaintiffs stood to lose CMA 33 and their substantial investment. <u>Id.</u> ¶¶ 79-80, N. In the Virginia Litigation, the Bank requested not less than $2.75 million trebled to $8.25 million pursuant to Va. Code § 18.2-500(A), punitive damages in the amount of $350,000.00, and the Bank's costs and reasonable attorneys' fees. <u>Id.</u> ¶¶ 38, N. During the course of the Virginia Litigation, the Bank claimed it was owed over $12 million in loans secured by the lien it had against the Charter. <u>Id.</u> ¶ 69. Plaintiffs settled the Virginia Litigation for $2.1 million. <u>Id.</u> ¶ 89. Thus, Plaintiffs settled with the Bank for a fraction of liability faced by Plaintiffs, which the Court already found as fair and reasonable. <u>Id.</u> ¶ N. It also is worth noting that Plaintiffs negotiated that the settlement payment received by the Bank to be paid towards BK Racing and Defendant Devine's outstanding loans owed to the Bank even though Defendants did not contribute to the settlement payment. <u>Id.</u> ¶ L. Consequently, the work by Plaintiffs' counsel and the results not only benefited Plaintiffs, but also benefited Defendants. <u>Id.</u>

For these reasons, the Court concludes that these factors weigh in favor of Plaintiffs for no reduction in the Ancillary Fees requested.

> ### Eleventh Factor: the nature and length of the professional relationship between attorney and client

V.    "In analyzing the nature and length of the professional relationship between an attorney and client, courts should note that '[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office.'" Software Pricing Partners, LLC, 2023 WL 3467768, at *5.  As noted above, Plaintiffs' counsel charged Plaintiffs "a historically lower rate" than what they charged during that same time period for new clients because of the firm's relationship with Plaintiffs.  (Doc. No. 90-3 ¶ 19).  Jenkins of Front Row also testified as to his helping to hire Skufca Law, PLLC, and his belief that their rates were reasonable based on his business experiences in hiring counsel for a variety of matters.  (Tr. 132:16-136:1).  While the Court makes its own independent analysis of reasonableness of the attorneys' fees, Jenkin's subjective belief provides context regarding the nature of the professional relationship with his attorneys.  Considering all of this, the Court concludes that this factor weighs in favor of Plaintiffs for no reduction in the Ancillary Fees requested.

> ### Fourth Factor, Seventh Factor, Tenth Factor, and Twelfth Factor: the attorneys' opportunity costs in pressing the instant litigation, the time limitations imposed by the client or circumstances, the undesirability of the case within the legal community in which the suit arose, and attorneys' fees awards in similar cases

W.     "In analyzing counsel's opportunity costs in pursuing certain litigation, the Court generally considers 'otherwise available business which is foreclosed' by participation in the instant litigation." Software Pricing Partners, LLC, 2023 WL 3467768, at *3 (quoting Johnson, 488 F.2d at 718).  "In considering the time limitations imposed, courts recognize that '[p]riority work that delays the lawyer's other legal work is entitled to some premium.'" Id. at *4 (quoting

Johnson, 488 F.2d at 718). Here, the Court has no information as to Plaintiffs' counsel's opportunity costs, and this breach of indemnity agreement case was not an undesirable case within the legal community. The Court, however, heard at trial about certain time limitations faced by Plaintiffs in light of the Bank's Motion for Summary Judgment and trial, and as a result of facing costly litigation and risk of potential liability, Plaintiffs entered into a settlement with the Bank. While the Parties do not point the Court to cases with attorneys' fees awards in similar cases, apart from those with hourly rates charges, the Court concludes, based on its review, that the fees claimed here are reasonable for the work completed. Stephenson, 2019 WL 4741735, at *8-9 (applying North Carolina law in recovery of ancillary fees covered by an indemnity agreement and awarding $215,350.58 in attorneys' fees and $23,159.86 in costs in addition to $500,000 paid to settle underlying claims); Software Pricing Partners, LLC, 2023 WL 3467768, at *7 (awarding $823,133.25 in attorneys' fees).[9]

X.      In sum, after considering and applying the twelve Johnson factors, the Court concludes that Plaintiffs' requested attorneys' fees are reasonable, including the number of hours billed and the rates billed for those hours, for a lodestar figure of $361,623.20, which accounts for reduction in the requested Ancillary Fees by $12,500.50 (the amount Plaintiffs request that is attributed to BK Racing's bankruptcy case) and $655 (unrecoverable support staff time). In addition, the Court concludes the $37,618.78 in requested costs are reasonable based on its review because these costs incurred are common and would be expected for this type of litigation.

Y.      Finally, in considering the second and third steps of reasonableness of attorneys' fees pursuant to Fourth Circuit guidance, the Court, in its discretion, finds that no reduction in the Ancillary Fees requested is necessary based on Plaintiffs' success. At least in the respect that these

---

[9] The Court recognizes this case awarded higher fees than requested here, but includes this case because there are certain similarities, including the breach claim.

claims did not move forward, Plaintiffs were successful in defending the Disposition Notice and the North Carolina Litigation. With respect to the Virginia Litigation, it is important to note that Plaintiffs were defending against a lien claimed on CMA 33 but arising solely from Defendants' obligations owed to the Bank. The Banks sought not less than $2.75 million trebled to $8.25 million pursuant to Va. Code § 18.2-500(A), punitive damages in the amount of $350,000.00, and the Bank's costs and reasonable attorneys' fees. (Doc. No. 83 ¶¶ 38, N). The Bank claimed during the litigation that it was owed over $12 million in loans secured by CMA 33. Id. ¶ 69. Plaintiffs were successful in defending the Virginia Litigation in the sense that they ultimately settled the claims for a fraction of the potential liability, and also to the benefit of Defendants by reducing loan amounts owed by BK Racing and Devine to the Bank.

Z.  For all these reasons, the Court concludes Plaintiffs are entitled to recover reasonable Ancillary Fees and Costs in the amount of $399,241.98.

### III.  CONCLUSION

**IT IS THEREFORE, ORDERED** that:

1.  Plaintiffs **FRONT ROW MOTORSPORTS, INC.** and **ROBERT A. JENKINS** shall recover on their breach of contract claim against Defendants **MICHAEL DISEVERIA** and **RONALD C. DEVINE** jointly and severally, Ancillary Fees in the amount of $361,623.20 for attorneys' fees and $37,618.78 in costs, for a total of $399,241.98. This award is in addition to the previously awarded $2,100,00.00 (Doc. No. 83). Plaintiffs may recover pre-judgment interest and post-judgment interest. Concerning pre-judgment interest, within ten days of this Order, Plaintiffs shall file a calculation of pre-judgment interest from April 1, 2022, the date the Complaint was filed, through the date of this Order, and shall also state the per diem amount of pre-judgment interest.

2.      The Clerk of Court is instructed to enter an Amended Judgment in accordance with this decision, with interest thereafter running at the lawful federal judgment rate.

3.      The Clerk is further directed to send copies of this Order to the parties' counsel and the Fourth Circuit Court of Appeals.

**SO ORDERED**.

Signed: June 28, 2024

Susan C. Rodriguez
United States Magistrate Judge