IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00138-SCR

| | |
|---|---|
| FRONT ROW MOTORSPORTS, INC. AND ROBERT A. JENKINS, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **ORDER** |
| | ) |
| MICHAEL DISEVERIA AND RONALD C. DEVINE, | )<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court on "Motion for Plaintiffs' Direct Attorneys' Fees and Costs Pursuant to F.R.C.P. 54" (Doc. No. 87) (the "Motion").

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). The Motion is now ripe for the Court's consideration. After fully considering the arguments, the record, and the applicable authority, the Motion is <u>granted in part</u> and <u>denied in part</u>.

### I.  BACKGROUND[1]

Plaintiffs purchased a NASCAR charter from BK Racing in December 2016 (the "Charter"). (Doc. No. 83 ¶¶ 9-11). After the purchase, Plaintiffs learned there was a lien against the Charter claimed by Union Bank & Trust (now Atlantic Union Bank) (the "Bank"), which was memorialized in a UCC-1 Financing Statement. <u>Id.</u> ¶¶ 12-13. Given the lien claimed by the Bank, Plaintiffs agreed to pay the remaining $1 million of the purchase price if the principals of BK

---

[1] A complete recitation of the facts may be found in the Court's Findings of Fact and Conclusions of Law following a bench trial in this matter (Doc. No. 83).

Racing signed an Indemnity Agreement ("Indemnity Agreement"). Id. ¶¶ 14-16. In January 2017, Defendants Michael DiSeveria ("DiSeveria") and Ronald C. Devine ("Devine") (DiSeveria and Devine collectively, the "Defendants") signed an Indemnity Agreement in their individual capacities. Id. ¶¶ 16-17.

The Bank never terminated or otherwise removed the lien from the Charter at any time between June 7, 2016, and March 9, 2022. Id. ¶ 20. The Bank made efforts to enforce its purported lien on the Charter beginning in October 2017, and continuing through March 2022, through two lawsuits (the "Bank Litigation"). Id. ¶¶ 21-94. On March 10, 2022, Front Row and the Bank signed a settlement agreement ("Settlement Agreement") settling the Bank's claims against Plaintiffs for $2.1 million. Id. ¶ 89. After signing the Settlement Agreement, the Bank dismissed its claims against Plaintiffs (on March 23, 2022) and filed a UCC-3 Financing Statement Amendment terminating its security interest with respect to the Charter (on March 16, 2022). Id. ¶ 90.

Plaintiffs, at their own expense, retained and paid counsel to defend Front Row in the Bank Litigation. Id. ¶¶ 34, 40, 95. During the Bank Litigation, Front Row made several demands to Defendants to comply with its obligations under the Indemnity Agreement, but Defendants did not indemnify Front Row, defend Front Row, or pay Front Row's attorneys' fees. Id. ¶¶ 23, 41-44, 47, 81, 97.

Plaintiffs initiated the instant lawsuit claiming Defendants breached the Indemnity Agreement by failing to defend Plaintiffs in response to the Bank Litigation related to the lien against the Charter and for failing to indemnify Plaintiffs for the amount paid to settle the lawsuit. (Doc. No. 1). Plaintiffs sought, among other things, reimbursement of the settlement paid to the Bank, their attorneys' fees and costs incurred in defending themselves in the Bank Litigation, and

their reasonable attorneys' fees and costs incurred in the present action. Id. At the summary judgment stage, the Court granted partial summary judgment in favor of Plaintiffs as to the validity, enforceability, and breach of the Indemnity Agreement. Defendants' counterclaim for a declaratory judgment that the Indemnity Agreement is unenforceable was dismissed. (Doc. Nos. 56 & 83 at 2). Thereafter, the Court conducted a bench trial from September 18 through 20, 2023, and issued its Findings of Fact and Conclusions of Law ultimately concluding Defendants are jointly and severally liable to Plaintiffs for breach of the Indemnity Agreement in the amount of $2,100,00.00, plus prejudgment interest and post-judgment interest. (Doc. No. 83). Following the Court's decision finding in favor of Plaintiffs in this action, the Court directed Plaintiffs to file the appropriate motion and briefing with respect attorneys' fees and costs incurred in this action.[2]

## II. DISCUSSION

Plaintiffs request that the Court award them costs and attorneys' fees arising out of their successful prosecution of the above-entitled action (referred to herein as "Direct Costs" and "Direct Attorneys' Fees").

### A. Costs

Pursuant to Federal Rule of Civil Procedure 54(d)(1),

> Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Unlike attorneys' fees, "costs are assessed against the unsuccessful litigant as a matter of course." Flint v. Haynes, 651 F.2d 970, 973 (4th Cir. 1981). Plaintiffs request $13,833.08 in Direct Costs incurred in this action. (Doc. No. 87 ¶ 2; Doc. No. 90 at 2; Doc. No. 105 ¶ 8). Defendants do not

---

[2] The Court addresses Plaintiffs' request for ancillary attorneys' fees and costs incurred in the underlying Bank Litigation its Additional Findings of Facts and Conclusions of Law. (Doc. No. 106).

contest that Plaintiffs are the prevailing parties[3] in this action, and that Plaintiffs are entitled to the $13,833.08 in Direct Costs. (Doc. No. 97 at 1). Accordingly, pursuant to Federal Rule of Civil Procedure 54(d)(1), the Court will award Plaintiffs Direct Costs in the amount of $13,833.08.

### B. Direct Attorneys' Fees

Plaintiffs also request $376,859.62 for their Direct Attorneys' Fees in this action. (Doc. No. 87 ¶ 1; Doc. No. 90 at 1-2; Doc. No. 105 ¶ 8). Generally, under North Carolina law, a party can only recover direct attorneys' fees if such recovery is authorized by statute.[4] Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814-15 (N.C. 1980) ("[A] successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute.").

1. N.C. Gen. Stat. § 6-21.2

Plaintiffs first argue they are entitled to Direct Attorneys' Fees under N.C. Gen. Stat. § 6-21.2 because the Indemnity Agreement is an "evidence of indebtedness" that "contains an obligation for Defendants to pay Plaintiffs' attorneys' fees."[5] (Doc. No. 90 at 2). Defendants argue that the Indemnity Agreement does not contain a provision authorizing an award of

---

[3] For purposes of Plaintiffs' Motion, Defendants do not contest that Plaintiffs are the prevailing parties in this action. Defendants otherwise maintain their objections to this Court's rulings. Defendants' objections are noted and preserved.

[4] The Court agrees with the Parties that North Carolina law applies and has already made such a finding. (Doc. Nos. 56 & 83).

[5] To demonstrate this obligation to pay attorneys' fees in the Indemnity Agreement, Plaintiffs point to the Court's Findings of Facts and Conclusions of Law where the Court quoted the Commercial Security Agreement between BK Racing and the Bank. (Doc. No. 90 at 2; Doc. No. 83 ¶ 7). To the extent Plaintiffs intentionally cited to this, such provision does not contain an obligation to pay attorneys' fees and, in any event, the provision in the Commercial Security Agreement, to which Plaintiffs were not parties, does not entitle Plaintiffs to Direct Attorneys' Fees. Plaintiffs may have intended to cite to the Paragraph 17 of the Court's Findings of Facts and Conclusions of Law, which quotes the Indemnity Agreement, and specifically the provision referencing attorneys' fees. (Doc. No. 83 ¶ 17). For purposes of this analysis, the Court considers the language of the Indemnity Agreement.

attorneys' fees with respect to the enforcement of the Indemnity Agreement, making N.C. Gen. Stat. § 6-21.2 inapplicable.[6]

> As relevant here, pursuant to N.C. Gen. Stat. § 6-21.2:
>
> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> (1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> (3) As to notes and other writing(s) evidencing an indebtedness arising out of a loan of money to the debtor, the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

N.C. Gen. Stat. § 6-21.2. Courts have construed "evidence of indebtedness" broadly to include indemnity agreements. N.Y. Marine & Gen. Ins. Co. v. Beck Elec. Co., No. 3:05-CV-373-H, 2007 WL 160689, at *10 (W.D.N.C. Jan. 16, 2007); Ohio Cas. Ins. Co. v. Am. Tec Elec. Co., No. 1:23-cv-253, 2023 WL 6218212, at *1-2 (M.D.N.C. Sept. 25, 2023). The statute's purpose "is to allow the debtor a last chance to pay his outstanding balance and avoid litigation, not to reward the prevailing party with the reimbursement of his costs in prosecuting or defending the action." Monsanto Co. v. ARE-108 Alexander Road, LLC, 632 F. App'x 733, 741 (4th Cir. 2015).

---

[6] Plaintiffs did not file a reply with respect to their Motion for Direct Attorneys' Fees and Direct Costs.

"[T]he court's primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply." Dixie Container Corp. v. Dale, 160 S.E.2d 708, 711 (N.C. 1968). Indemnity agreements should "be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties, but it cannot be extended to cover any losses which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract." Id.

The Indemnity Agreement states in relevant part:

> 1. **Indemnity.** Ronald C. Devine, Michael DiSeveria, and Wayne M. D. Press, all officers, Members or control persons of BK Racing, LLC hereby fully indemnify and agree, each in his individual capacity, to jointly and severally defend and hold harmless Robert A. Jenkins and Front Row Motorsports, Inc., its officers, directors, partners, agents and employees from and against any claims, liabilities, suits, proceedings, causes of action, or damages of any kind, whether in contract, tort or otherwise, <u>that arise from or relate to *claims by any and all third parties* against one or both Indemnitees</u> arising from or related to (a) the December 06, 2016 sale and transfer by BK Racing, LLC to Front Row Motorsports, Inc. of a NASCAR Cup Series Charter (number 33) Member Agreement; (b) any security agreements or financing statements seeking to be enforce [*sic*] against the Charter by any person or entity; (c) any person or entity claiming any interest, whether perfected or not, in the Charter; and (d) any judgment awards being levied against the Charter by any person or entity. <u>The Indemnitors shall pay claims and losses in connection with the [*sic*] all of the foregoing and shall investigate and defend all claims, suits, or actions of any kind or nature, including appellate proceedings in the name of the applicable indemnified party, and shall pay all costs and judgments and attorney's fees which may issue thereon.</u>

(Doc. No. 83 ¶ 17; Pl.'s Ex. 8) (emphasis added). The Indemnity Agreement does not contain any other clauses regarding attorneys' fees. (Pl.'s Ex. 8).

Based on its plain language, the Court agrees with Defendants that the Indemnity Agreement does not contain a provision allowing for Plaintiffs to recover attorneys' fees with respect to enforcement of the Indemnity Agreement. Defendants agreed to defend and indemnify Plaintiffs and specifically to pay attorneys' fees and costs arising from claims by third parties

arising from and related to: "(a) the December 06, 2016 sale and transfer by BK Racing, LLC to Front Row Motorsports, Inc. of a NASCAR Cup Series Charter (number 33) Member Agreement; (b) any security agreements or financing statements seeking to be enforce[d] against the Charter by any person or entity; (c) any person or entity claiming any interest, whether perfected or not, in the Charter; and (d) any judgment awards being levied against the Charter by any person or entity." (Pl. Ex. 8; Doc. No. 83 ¶¶ 17-19, 96). However, the clause does not state or otherwise include attorneys' fees with respect to a suit filed by Plaintiffs to enforce the Indemnity Agreement itself. To interpret the provision so broadly as to include attorneys' fees in this action would be inconsistent with the language of the Indemnity Agreement. If Plaintiffs wished to recover attorneys' fees in connection with enforcing the Indemnity Agreement, then Plaintiffs could have included such a provision in the Indemnity Agreement. See Ohio Cas. Ins. Co., 2023 WL 6218212, at *1-2 (concluding plaintiff was entitled to attorneys' fees under N.C. Gen. Stat. § 6-21.2 in action enforcing indemnity agreement where indemnity agreement contained provision defining loss to include "fees . . . in enforcing any of the covenants and conditions of this Agreement"); N.Y. Marine & Gen. Ins. Co., 2007 WL 160689, at *10 (awarding attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.2 in action enforcing indemnity agreement where indemnity agreement contained provision that "[i]f the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this Agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and including 25% of such sums as attorneys' fees"); Trull v. Central Carolina Bank & Tr., 478 S.E.2d 39, 42 (N.C. Ct. App. 1996) ("The promissory note here provides for the payment of "reasonable attorneys' fees incurred by the holder in enforcing the agreements of the Borrower(s).").

In Dixie Container, the contract contained a provision requiring a contractor to indemnify a building owner "against all loss, cost, including reasonable attorney's fees, or damages on account of injury to persons or property occurring in the performance of this contract and agreement." Dixie Container Corp., 160 S.E.2d at 711. Based on this language, the North Carolina Supreme Court found that "the inclusion of attorney's fees and cost in the indemnification agreement seems to refer to the defense of third-party actions against plaintiff." Id. The court observed that "[o]rdinarily, indemnity connotes liability for derivative fault . . . the engagement is to make good and save anothr [*sic*] harmless from loss on some obligation which he has incurred or is about to incur to a third party." Id. (internal citations and quotations omitted).

Here, like in Dixie Container, Defendants agreed to defend and hold harmless "from and against any claims, liabilities, suits, proceedings, causes of action, or damages of any kind, whether in contract, tort or otherwise, *that arise from or relate to claims by any and all third parties against one or both Indemnitees*" and with respect to those, Defendants agreed to pay all claims and losses including attorneys' fees. (Doc. No. 83 ¶ 17; Pl.'s Ex. 8) (emphasis added). This provision similarly "seems to refer to the defense [and damages] of third-party" claims, liabilities, suits, proceedings, causes of action, or damages. Dixie Container Corp., 160 S.E.2d at 711; see also Nucor Corp. v. Gen. Bearing Corp., 423 S.Ed.2d 747, 749-50 (N.C. 1992) (considering whether attorneys' fees were appropriate under N.C. Gen. Stat. § 6-21.2 and noting "the only mention of attorneys' fees in the entire Stock Purchase Agreement is under Section 9 which deals solely with indemnification of either party in the event of incurred liability or obligation to a third party. 'In indemnity contracts the engagement is to make good and save another harmless from loss on some obligation which he has incurred or is about to incur to a third party . . . .' We therefore cannot agree with Nucor that this sole reference to attorneys' fees, within the entire Stock Purchase

Agreement, taken in its context, is sufficient to show that the parties' 'agreement to arbitrate' does provide otherwise in negating the prohibition and exclusion of counsel fees contained in N.C.G.S. § 1–567.11." (internal citations omitted)).

For these reasons, the Court concludes that Plaintiffs are not entitled to recover Direct Attorneys' Fees in this action under N.C. Gen. Stat. § 6-21.2.

    2. <u>N.C. Gen. Stat. § 6-21.5</u>

In the alternative, Plaintiffs argue that they are entitled to Direct Attorneys' Fees under N.C. Gen. Stat. § 6-21.5. Pursuant to N.C. Gen. Stat. § 6-21.5:

> In any civil action, special proceeding, or estate or trust proceeding, the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading. The filing of a general denial or the granting of any preliminary motion, such as a motion for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12, a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), a motion for a directed verdict pursuant to G.S. 1A-1, Rule 50, or a motion for summary judgment pursuant to G.S. 1A-1, Rule 56, is not in itself a sufficient reason for the court to award attorney's fees, but may be evidence to support the court's decision to make such an award. A party who advances a claim or defense supported by a good faith argument for an extension, modification, or reversal of law may not be required under this section to pay attorney's fees. The court shall make findings of fact and conclusions of law to support its award of attorney's fees under this section.

In considering this statute, courts determine "whether (1) the pleadings contain a complete absence of a justiciable issue of either law or fact, . . . or (2) whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." <u>Burleson v. Burleson</u>, COA23-187, 2024 WL 1163348, at *3 (N.C. Ct. App. Mar. 19, 2024) (quoting <u>Credigy Receivables, Inc. v. Whittington</u>, 689 S.E.2d 889, 893 (N.C. App. 2010)) (internal quotation marks omitted). "In North Carolina, a justiciable issue is one that is 'real and present as opposed to imagined or fanciful.'" <u>Credigy Receivables, Inc.</u>, 689 S.E.2d at 895 (quoting <u>In re Williamson</u>, 373 S.E.2d 317, 325 (N.C. App. 1988)).

"Section 6–21.5 was enacted 'to discourage frivolous legal action . . . .'" Id. (quoting Short v. Bryant, 329, 388 S.E.2d 205, 206 (N.C. App. 1990)). The presence or absence of justiciable issues is a question of law. Burleson, 2024 WL 1163348, at *3.

The Court has thoroughly reviewed all pleadings and filings in this matter, and is familiar with the case after having conducted a multi-day bench trial. Plaintiffs have not shown, and the Court does not find, the complete absence of a justiciable issue of either law or fact raised by Defendants. While the Court ultimately ruled in favor of Plaintiffs in this matter after a bench trial, Defendants' defenses were not frivolous. The defenses raised were justiciable throughout the case. The Court finds no reason to award Direct Attorneys' Fees under this statutory provision. Accordingly, the Court concludes that Plaintiffs are not entitled to recover Direct Attorneys' Fees in this action under N.C. Gen. Stat. § 6-21.5.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Motion for Plaintiffs' Direct Attorneys' Fees and Costs Pursuant to F.R.C.P. 54 (Doc. No. 87) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' request for Direct Costs is **GRANTED**, and Plaintiffs are awarded $13,833.08 in Direct Costs to be paid by Defendants. Plaintiffs' request for Direct Attorneys' Fees is **DENIED**.

**SO ORDERED**.

Signed: June 28, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge